UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:25-CV-05015 |
| Plaintiff, | TEMPORARY RESTRAINING ORDER TO PROVIDE INVOLUNTARY MEDICAL TREATMENT |
| v. | |
| THOMAS PRINS, | |
| Defendant. | |

The United States Department of Homeland Security, Immigration and Customs Enforcement (hereinafter "ICE"), by and through the United States Attorney for the Western District of Washington, has filed an ex parte emergency motion for a temporary restraining order permitting the government to immediately conduct involuntary blood draws, collection of urine samples, physical examination, and to administer involuntary intravenous hydration for Thomas Prins, who is being held as a civil detainee at the Northwest ICE Processing Center in Tacoma, Washington.

Mr. Prins is a citizen and national of Canada who has been detained at the Northwest ICE Processing Center since November 19, 2023. Dkt. 1 ¶ 6. Mr. Prins has been on a self-imposed hunger strike and refused any significant fluid intake since December 26, 2024. Dkt. 1-4 ¶ 8.

TEMPORARY RESTRAINING ORDER TO PROVIDE INVOLUNTARY MEDICAL TREATMENT - 1

This is not his first hunger strike. *See In re Prins*, No. 3:24-MC-05006-TMC, 2024 WL 2749151, at *1–4 (W.D. Wash. May 29, 2024); *United States v. Prins*, No. 3:24-cv-05612-TMC, 2024 WL 3729896, at *1–2 (W.D. Wash. July 31, 2024).[1] According to a declaration filed by Dr. Eddie Wang, the medical clinic director at the Northwest ICE Processing Center and a board-certified physician, this is Mr. Prins's eighth hunger strike since his arrival in November 2023. Dkt. 1–4 ¶ 7. Mr. Prins stated that the purpose of his hunger strike is to be released from custody. *Id.* ¶ 8.

Mr. Prins has refused any interactions with Northwest ICE Processing Center medical staff and last allowed medical staff to perform vital signs and basic physical examinations on July 31, 2024. *Id.* ¶¶ 8, 12. He has also not consented to blood or urine tests. *Id.* ¶ 12. Additionally, he has refused any interactions with the Processing Center's behavioral health team since July 16, 2024. *Id.* ¶ 9. Dr. Wang states that Mr. Prins's current physical condition requires medical and physical assessments—including vital sign and laboratory monitoring, blood draws, and urine samples—and the administration of intravenous hydration to prevent further deterioration and serious medical complications. *Id.* ¶¶ 22–23. Without hydration, Mr. Prins risks severe metabolic imbalance, which could result in permanent organ damage, cardiac arrest, or death. *Id.* ¶ 20.

A plaintiff seeking a temporary restraining order must show: (1) they are likely to succeed on the merits, (2) the potential for irreparable harm in the absence of preliminary relief, (3) the balance of equities is in favor of injunction, and (4) the relief sought is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). To obtain a temporary restraining order ex

---

[1] The Court's two prior temporary orders allowing the United States to conduct involuntary medical monitoring and/or involuntary intravenous hydration of Mr. Prins were vacated after Mr. Prins voluntarily "demonstrated adequate caloric and fluid intake." *See In re Prins*, 2024 WL 2749151, at *2. In both previous cases before the undersigned judge, Mr. Prins voluntarily resumed eating before full briefing or a hearing on the Government's request for a longer preliminary injunction.

TEMPORARY RESTRAINING ORDER TO PROVIDE INVOLUNTARY MEDICAL TREATMENT - 2

parte, the moving party must show specific facts in an affidavit that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). This Court's local civil rules also require the moving party to "serve all motion papers on the opposing party, by electronic means if available, before or contemporaneously with the filing of the motion and include a certificate of service with the motion." W.D. Wash. Local Civ. R. 65(b)(1).

Here, the United States has filed affidavits from Dr. Wang and from Allison Williams, Assistant Field Office Director of the ICE office of Enforcement and Removal Operations (ERO), explaining the immediate and irreparable harm both to Mr. Prins's health and safety and the operations of ICE at the processing center if they cannot conduct medical assessments, laboratory testing, and administer intravenous hydration. Dkt. 1-3, 1-4.

In evaluating the United States' likelihood of success on the merits, the Court recognizes that federal courts are split on the applicable standard to evaluate the constitutionality of administering involuntary medical care, hydration, and nutrition to civil immigration detainees. *See In re Bahadur*, 441 F. Supp. 3d 467, 475 (W.D. Tex. 2020) (discussing possible standards under *Turner v. Safley*, 482 U.S. 78 (1987), *Youngberg v. Romeo*, 457 U.S. 307 (1982), and *Bell v. Wolfish*, 441 U.S. 520 (1979)).

Under any of the standards described in *Turner*, *Youngberg*, and *Bell*, however, the Court finds that the United States' temporary request in this motion—to conduct involuntary medical assessments, laboratory testing, and intravenous hydration under the current circumstances faced by Mr. Prins—is likely to succeed on the merits when balancing the United States' interests in preserving the health and life of detainees in its custody against Mr. Prins's interest in continuing his hunger strike and refusing medical care. Based on the declarations of Dr. Wang and Ms. Williams, the Court finds that without the requested medical assessment, laboratory tests, and

intravenous hydration, immediate and irreparable injury will occur to the United States' interest in maintaining Mr. Prins's health and life, and that the immediate threat of this injury requires this order be issued before full notice and opportunity for Mr. Prins to be heard. *See* Fed. R. Civ. P. 65(b)(1), (2). The Court further finds that the balance of equities and the public interest favor entry of this limited temporary injunction.

Therefore, IT IS HEREBY ORDERED that ICE may undertake necessary medical treatment and testing to save Mr. Prins's life and prevent injury, including:

1. Physical examinations, including daily weight assessments and frequent vital sign checks;

2. Laboratory tests, consisting of:

   a. Complete metabolic panel. This test reveals an increase in markers of kidney function in view of any renal injury. The panel tests include: BUN (blood urea nitrogen), creatinine level, and proteins. It also reveals electrolyte disturbances as potassium, phosphate, magnesium and glucose levels.

   b. Complete blood count. This test reveals the hemoglobin level.

   c. Urinalysis, which reveals the presence of ketones, blood and crystals in the urine.

   d. Thiamine levels to assess deficiency after day 14 of a hunger strike.

   e. Electrocardiogram, if the patient shows elevated potassium, which can lead to arrhythmias.

   f. Creatine phosphokinase (CPK), which is an enzyme found inside muscle cells and is released into the blood when the muscle cells rupture. The increase in CPK can lead to the breakdown of muscle tissue that can fatally damage other vital organs.

    g. Pre-albumin levels. Pre-albumin is used as a marker for nutritional status evaluation, and levels will decrease over time the longer a patient fails to consume adequate nutrition. The pre-albumin level correlates with patient morbidity and mortality risk. Normal pre-albumin is 15-35 mg/dL. When pre-albumin falls to 5-11 mg/DL, significant morbidity risks exist and aggressive nutritional support is necessary; and

  3. Intravenous hydration.

  IT IS HEREBY FURTHER ORDERED that if Mr. Prins refuses to cooperate with the necessary medical treatment and monitoring, ICE, and medical staff at the Northwest ICE Processing Center may use soft medical restraints to assure the safety of Mr. Prins and the medical staff when administering the necessary treatment.

  This temporary order expires on January 23, 2025 unless it is extended by further order of this Court. See Fed. R. Civ. P. 65(b)(2). The Court will issue a formal hearing notice to schedule a preliminary injunction hearing no later than January 23, 2025 at 1:00 P.M. *See* Fed. R. Civ. P. 65(b)(3). The United States must be prepared to present evidence in support of its request for an injunction lasting for the duration of Mr. Prins's hunger strike and a representative of ICE must be present for the hearing. The United States must also file a status report, supported by affidavit, on Mr. Prins's condition and any supplemental briefing on its request for a longer injunction no later than the day before the scheduled hearing. The United States must also arrange for Mr. Prins to appear by telephone or videoconference for the hearing. ICE is directed to provide a copy of this order and the notice of hearing to Mr. Prins as soon as possible.

  Dated this 8th day of January, 2025.

                Tiffany M. Cartwright
                United States District Judge

TEMPORARY RESTRAINING ORDER TO PROVIDE INVOLUNTARY MEDICAL TREATMENT - 5